IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 20-1566 DHU |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY CHISCHILLY and | ) | |
| STACEY YELLOWHORSE, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO DEFENDANT YELLOWHORSE'S RESPONSE TO NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States hereby submits its Reply to Defendant Yellowhorse's Response to its Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) (Doc. 125).

**ARGUMENT**

A. **Evidence of Devil Worship**

Since the filing of the government's original notice (Doc. 102) related to Defendant Yellowhorse's statements, it has discovered on her public Facebook page, that Defendant Yellowhorse includes a book entitled, "Satan's Bible" under her "Books" and "Likes" tabs. Additional "Likes" include a Facebook page for "Satanism Today."[1] *See* Exhibit A, Screenshots from Defendant's public Facebook profile.

In particular, "Satan's Bible," by Reverend Dr. Robert Fraize, appears to be a self-published book that discusses topics such as "Satanic Magic" and "The Gospel of Filth." Relevant

---

[1] There is an additional "liked" page called "LaVeyan Satanism," though on its title page it specifically states, "This is not a satanic page." The title page is included at the end of Exhibit A.

here, a significant portion of the book discusses accounts of sacrifice[2] that include numerous stories of people being crucified, as well as being killed by way of stabbing and puncturing with nails in the victims' heads, necks, and bodies. *See* Exhibit B, Fraize, Robert, *Satan's Bible*, 210-11, 228-30, 245, 254-56 (2d ed. 2016). There is also at least one story that involves the dismembering of a body. *Id*. at 254.

In her argument opposing the admission of her prior statements about her satanic beliefs, Defendant Yellowhorse argues that such evidence goes to her propensity to commit the crime and is highly prejudicial—so much so that a limiting instruction will not cure the prejudicial effect of the evidence. Defendant claims that, without expert testimony to explain that the murder in this case was satanic in nature, any discussion of satanism "is irrelevant and pure prejudicial speculation." Doc. 125 at 5.

First, unlike Defendant argues, no expert testimony is necessary here. The government does not assert that Defendant Yellowhorse espoused any particular *kind* of satanism or that the murder was a particular type of ritual. What it does contend is that Defendant Yellowhorse had an undisputed interest in satanism (regardless of the specific beliefs) by virtue of her own statements and her membership in numerous satanic Facebook groups. And as part of that interest, she references a single book on her Facebook page that claims to be a "bible" and includes numerous stories of violent murders that are strikingly similar to the one that took place in this case. Further, Defendant Yellowhorse's defense in this case is that *she did not commit the murder*. She claims she instead ran away when the brutal crime was taking place and that she was coerced into helping cover up the crime after the fact. Thus, the proffered evidence goes directly to Defendant

---

[2] The stories of sacrifice appear in a portion of the book dedicated to alleged historical "ritual murders" by "Jews."

Yellowhorse's identity as one of the killers in this case, as well as her intent in committing the crime. She told numerous people of her interest in satanism and recommended a book on her Facebook page entitled "Satan's Bible" that contains ritualistic murders that use strikingly similar methods as those used in this case. The evidence is properly submitted under rule 404(b).

Given the proper purpose for which this evidence is offered and the obvious relevance to proving up the crime which Defendant does not seriously dispute, this Court must again ensure that the risk of unfair prejudice under rule 403, does not substantially outweigh the probative value of the evidence. The evidence here is highly probative given that it explains who was involved in the murder and why the murder was carried out in such a fashion. Though the evidence does admittedly carry some risk of unfair prejudice, it is not unfairly so. Any unfairness can be cured with a limiting instruction and careful voir dire of the panel to strike for cause those who are unable to sit on a case involving such subject matter. For those reasons, this evidence is admissible under 404(b).

### B. Statements Related to a Previous Murder

Defendant next objects to the admission of statements that she made to witness P.Y. indicating that she and her co-defendant had previously killed someone. Defendant argues that the statements are "wholly unsubstantiated and highly prejudicial," and that they are not offered for a proper purpose under rule 404(b). Doc. 125 at 8. Defendant's arguments fail for a number of reasons.

First, the government is not offering Defendant Yellowhorse's statement for the truth of the matter. Whether or not Yellowhorse's claim of having murdered someone can be "substantiated" is irrelevant to this Court's rule 404(b) analysis. What matters here is that

3

Yellowhorse made the statements, regardless of whether she was telling the truth when she made them. In her response, Yellowhorse does not appear to deny that she made the statements, only that they are true. P.Y. can testify about what Yellowhorse told her and will further describe Yellowhorse's demeanor when she did so. After cross examination, the jury can decide the veracity of P.Y.'s testimony and whether it finds P.Y. to be a credible and reliable witness.

Second, the government is offering the statements not to prove Defendant Yellowhorse actually murdered someone previously, but to prove up her state of mind, that is her intent, in the days leading up to the murder in this case. Intent is a permissible basis to allow evidence under rule 404(b). Such evidence "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Indeed, Defendant Yellowhorse is going to claim at trial that she did not participate in the murder of the victim, and that she herself was the traumatized victim of her co-defendant. In response to this defense, the government will present evidence that Yellowhorse disclosed to P.Y. that she and Chischilly killed another man and hid him where he could not be found. More importantly, during the conversation Yellowhorse's tone was upbeat and happy. The evidence will show that Yellowhorse was not the "shrinking violet" that she claims, but instead was and is a person willing to gleefully boast about having killed someone with her then-partner.

Finally, the statements are not unduly prejudicial as there is nothing gory or violent about the statements to P.Y. For evidence to be excluded under Rule 403, the danger of undue prejudice "must substantially outweigh" its probative value when the evidence is given "its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Merritt*,

4

961 F.3d 1105, 1115 (10th Cir. 2020) (quoting *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008)). Here, Yellowhorse's statements are presented to show her state of mind in the days leading up to the crime, not that she actually murdered anyone on a prior occasion. The statement is a general one, lacking all particular details of the claimed murder. Thus, it is highly probative of the subject crime and Yellowhorse's state of mind and role in it. Any prejudicial value is minimal, and the statements should be admitted.

## CONCLUSION

For the foregoing reasons, and the for the reasons set forth in its original Notice, the United States again respectfully requests that this Court allow the above-described evidence to be offered in the prosecution's case-in-chief.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney

*Electronically filed on February 28, 2022*
FREDERICK T. MENDENHALL
JENNIFER M. ROZZONI
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will cause a copy of this filing to be sent to counsel for Defendant.

*Filed Electronically on February 28, 2022*
JENNIFER M. ROZZONI
Assistant United States Attorney