IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 20-1566 DHU |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| STACEY YELLOWHORSE, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF KEEPING DOCS. 102, 125, 137 UNSEALED**

Pursuant to the Court's oral request at the Motion to Suppress hearing, the United States files this brief in support of keeping Docs. 102, 125, & 137 unsealed.

**ARGUMENT**

"Courts have long recognized a common-law right of access to judicial records." Mann v. Boatright, 477 F.3d 1140, 1149 (10th Cir. 2007). Indeed, there is a "strong presumption in favor of public access to judicial records," which includes documents filed on a docket. Id. That presumption is particularly strong "where the district court use[s] the sealed documents to determine litigants substantive legal rights." United States v. Pickard, 733 F.3d 1297, 1302 (10th Cir. 2013). The reason for this common-law right is the public's interest in "keep[ing] a watchful eye on the workings of public agencies" or even publishing "information concerning the operation of the government." Nixon v. Warner Comms., Inc., 435 U.S. 589, 598 (1978). The doctrine is, in other words, supported by a sunshine principle – the government works better and serves the people better if its workings are done in the open where the public can, if it wants, check in on it. Cf. Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 509 (1984) ("People in an

open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

The presumption of public access is not, however, absolute. It "can be overcome where countervailing interests *heavily* outweigh the public interests in access to the judicial records." Pickard, 733 F.3d at 1302 (emphasis added). "[T]he privacy interest inherent in personal medical information," for example, "can overcome the presumption of public access." United States v. Dillard, 795 F.3d 1191, 1205-06 (10th Cir. 2015). The party seeking to overcome the presumption -- here, Yellowhorse -- "bears the burden of showing some significant interest that outweighs" it. Pickard, 733 F.3d at 1302.

The interest Yellowhorse identified at the hearing was her right to a fair trial, raising the specter that publicity about the substance of the documents identified could garner media attention and taint the jury pool. That interest is too speculative to overcome the strong presumption in favor of public access to the Court's records. Apart from a couple of initial stories in the Gallup Sun and the Navajo Times, this case has not received media attention. See Grisly Murder in Mexican Springs, Gallup Sun, February 28, 2020; Police Blotter: Mexican Springs couple held in connection with gruesome murder, Navajo Times, Bill Donovan, February 13, 2020. The lack of media attention to this point suggests that overworked and understaffed local outlets like the Albuquerque Journal are unlikely to journey into a random docket on the hunt for a news story. Moreover, even in the unlikely event an outlet does make a news story of the documents identified, the Court has considerable remedies to cure any potential taint to the jury pool. It can widen the jury pool and it can engage it in an extensive voir dire. Indeed, the parties are already planning to enlarge the typical jury questionnaire. Doc. 123. The risk of a news story tainting the jury pool is just too remote to grant the relief Yellowhorse requests.

2

The Tenth Circuit's discussion about the press's right, or lack thereof, to suppressed evidence in United States v. McVeigh, is not germane to the Court's analysis here. 119 F.3d 806, 813 (10th Cir. 1997). As backdrop, that case concerned the Oklahoma City bombing of a federal building, which killed 138 people. Id. at 808. The case was "a matter of substantial public concern from the outset," garnering attention from many national media outlets, including making the front page of the New York Times. Id.; see, e.g., Bomb Suspect is Held, Another Identified, Toll hits 65 as Hope for Survivors Fades, Todd S. Purdum, *The New York Times*, April 22, 1995.

The issue in that opinion was whether press groups had a First Amendment or common law right to a defendant's suppressed statement after a suppression hearing that was open to the public. McVeigh, 119 F.3d at 812-13. The Court concluded no, reasoning that "inadmissible evidence is not necessary to understand the suppression hearing, so long as the public *is able to understand the circumstances* that gave rise to the decision to suppress." Id. at 813 (emphasis added). From that the reasoning, you can see that the touchstone remains the sunshine principle. The issue turned on whether the suppressed or inadmissible statement was necessary to "understand the circumstances" that gave rise to the district court's decision to suppress the statement. Because, in that case, the suppressed statement was not necessary to understand why the district court ruled the way it did, the press and public did not have a right to the statement. Id. ("[B]oth the press and public had ample opportunity to understand the circumstances surrounding Nichols' statements, and the reasons why those statements were deemed inadmissible against McVeigh."). That reasoning makes some sense if the Court considers the Suppression hearing the parties just had. The actual substance of the contested statement rarely came up. Instead, the core of the analysis before the Court was the circumstances surrounding the statement: how the parties were behaving, where the parties were, *other* statements the parties made etc . . . Given that

3

backdrop, one could see how the public could perfectly understand whatever decision the Court comes to on that suppression issue without having to hear the substance of the underlying contested statement.

The reasoning from <u>McVeigh</u> does not, however, apply to this Motion in Limine briefing[1] because the substance of the evidence Yellowhorse seeks to seal is bound up in the decision the Court must make. In coming to a decision, the Court is going to have to explain how and why the evidence either goes to a permissible 404(b) purpose or does not and why the evidence is either substantially more prejudicial than probative or not. It cannot decide that issue as a court can were it a Fifth Amendment suppression issue. The issue is not about collateral facts to contested evidence, but about the very nature *of* the contested evidence. Is it identity evidence? If not, why not? The Court is going to have to answer those questions in its eventual opinion on the matter, and the public is not going to be able to evaluate the quality of or understand that decision making without knowing what the underlying evidence is.

Consider this simplified hypothetical to show how a discussion of the underlying evidence is unavoidable in this situation for the public to understand the Court's reasoning: two parties ask a court to decide whether an object is a car or a sailboat. They bring the object in, in a sealed proceeding, for the Court to observe. The parties then forbid the Court from telling anyone else, either in a written opinion or otherwise, the characteristics of the object it is evaluating. The Court certainly could make a ruling – it could write, well I saw it and it was a car, or maybe even, it is a car because it looked like other cars I have seen. But what if a member of the public had some questions about the ruling. Can you tell me how it looked like other cars you've seen? What about

---

[1] Even if it did provide guidance, it would not, as Yellowhorse suggests, support sealing the motion briefing. At best, it would support redaction of portions of the motion briefing, e.g., the descriptions of the underlying evidence.

it makes you think it was a car? These are reasonable questions and go to understanding how the Court came to its decision, but the Court is forbidden from answering them in this hypothetical.

So too here if the Court decides to keep the underlying evidence shrouded in secrecy. It can certainly rule on the underlying matter, e.g., this is not identity evidence, but it is not going to be able to offer much more to the public about its reasoning if it is to keep the underlying evidence under seal. It cannot describe that evidence and it cannot offer characteristics of that evidence without revealing the nature of evidence itself. Because sealing the underlying evidence will prevent the public from understanding the Court's eventual decision, the underlying evidence should remain unsealed.

## CONCLUSION

The reasons offered are not enough to cloak our public work from public view. For the foregoing reasons, the United States requests the Court maintain the documents identified above as unsealed records.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney

*/s/ electronically filed March 11, 2022*
FREDERICK MENDENHALL
JENNIFER ROZZONI
Assistant U.S. Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-1402 phone
(505) 346-7296 fax

I hereby certify that a copy of this motion was delivered via CM/ECF to counsel for the defendant.

*Electronically filed*
FREDERICK MENDENHALL