IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | Cr. No. 20-1566 DHU |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| STACEY YELLOWHORSE, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF MOTION IN LIMINE TO ADMIT STATEMENTS AGAINST INTEREST**

The United States replies to Defendant Stacey Yellowhorse's Response to the United States Motion in Limine to admit statements against interest. Doc. 135 ("Response"). Yellowhorse opposes admission of Chischilly's inculpatory statements made to his family members. Id.at 1-13. Under Rule 804(3), three elements must be satisfied for Chischilly's statements to be admissible. Doc. 121 at 6. Yellowhorse challenges only one element – that is, she argues only that there are insufficient corroborating circumstances surrounding Chischilly's statements to allow for their admission. Her argument fails for the reasons that follow.[1]

---

[1] One other argument Yellowhorse raises is that the United States conceded that Chischilly's statements were inadmissible by not opposing her motion to sever trials. Response at 4. This is so, according to her, because in her motion to sever she argued that Chischilly's family confession was inadmissible and prejudicial against her if they were tried jointly. Id. That argument was one of many arguments she raised in support of severance, which included mutually antagonistic defenses, the introduction of Chischilly's criminal history, trauma-bonding evidence, and the purported inability of a jury to follow limiting instructions. Doc. 78 at 2, 6-8, 10-13. She did not raise the issue of admissibility of the statements under Rule 804(b)(3). Doc. 78 at 9-10.

The United States filed a three-sentence response noting that it did "not object to the Court severing defendants to hold separate trials." Doc. 88. It did not concede any of the many arguments raised, nor did it agree with the basis of Yellowhorse's request; it simply did not "oppose the Defendants' requested

**LEGAL BACKGROUND**

In assessing the circumstances surrounding Chischilly's statements, "the inference of trustworthiness . . . must be strong." United States v. Lozado, 776 F.3d 1119, 1132 (10th Cir. 2015). But, the Court's role is not to determine whether the "statements sought to be admitted [a]re *surely* true, for it is the role of the jury – not the court – to assess the credibility of witness testimony." Id. (emphasis added). Where there is, as we have here, a close relationship between declarant (Chischilly) and the witnesses (Chischilly's family), there is already a "factor in favor of a finding of trustworthiness rather than" as Yellowhorse attempts to argue "a point against." United States v. Manning, 787 F. App'x 984, 988 n.1 (10th Cir. 2019) (emphasis omitted); see also United States v. US Infrastructure Inc., 576 F.3d 1195, 1209 (11th Cir. 2009) (collecting 804(b)(3) cases where statements were admitted as sufficiently corroborated because, in part, they were made to witnesses with "a close relationship" to the declarant). Though Yellowhorse relies on Wright and Miller for factors in this analysis, Response at 5-6, the Tenth Circuit, while not solidifying the contours of what "must be used to corroborate" the proffered statements, has laid out factors that "can" be considered which are "the declarant's credibility and the circumstances of the statement bearing on its truthfulness." Lozado, 776 F.3d at 1132. As with other hearsay statements, each of Chischilly's proffered statements must be considered individually for its admissibility. See United States v. Smalls, 605 F.3d 765, 783 ("Rather than carefully analyzing Cook's statement in accordance with Rule 804(b)(3) and *Williamson* to separate Cook's admissible from inadmissible remarks, the district court, without ever discussing any particular parts of his statement simply concluded" all of Cook's statements were inadmissible).

---

severance." Id. Those three sentences not objecting to the relief requested did not waive or concede any argument with respect to admission of Chischilly's family confession.

I.  **<u>Blame-shifting</u>**

Yellowhorse argues the circumstances around the statements are not reliable because Chischilly's statements, purportedly, shifted the blame onto Yellowhorse. Response at 2, 3, 6. According to her, Chischilly gave "himself a minor role," Response at 2-3, and thus none of the statements can be trusted. There are several problems with that argument.

First, Chischilly did not blame shift or cast himself in a minor role. The statements themselves belie that. For one, the statement Yellowhorse zeroes in on as the blame-shifting statement is the one that "he nailed the victim down to the floor." Response at 6. The "blame-shifting" statement she targets is worth repeating: Chischilly admitted that he *nailed a woman to the floor*. Doc. 122-1 at 29:12-19. That admission is not blame shifting. It is the most shocking fact about this case. Chischilly admitted to crucifying someone. What Chischilly did and what he admitted to is a form of torture as part of a murder. And, contrary to Yellowhorse's argument that Chischilly thought admitting to murder-by torture was self-"exculpatory," Response at 4, 8-9, Chischilly knew how self-inculpatory his statements were – not only as a matter of common sense – but also by his family's reaction. His sister screamed at him for his confession:

> I didn't hear most of what he was saying, I was so angry, and I was yelling at him.
> . . . . And I couldn't understand why he would do something like that because he –
> in the past, he was never like that.

Doc. 122-1 at 9:25-10:4. His other family members had similar reactions. <u>Id.</u> at 31:1-2 ("We all got after him, telling him why is he telling us, he should be telling the cops."); <u>id.</u> at 41:7-9 ("I was in shock. I couldn't listen anymore, I couldn't take any more, so I excused myself from the room and I walked out."). Not only were Chischilly's admissions not blame-shifting, but from his family's reaction, there is no chance he *thought* they were blame-shifting.

Second, the full context of Chischilly's statement shows he was not blame shifting. In making the argument to the contrary, Yellowhorse focuses only on Chischilly's statement about

3

his actions in effecting the murder but ignores the rest of his statements. For instance, she ignores his statement that "we had killed her." Doc. 122-1 at 38:23-24. That statement is not blame-shifting. He did not tell his family – Yellowhorse killed her, I only helped. He told them "we" killed her giving himself an *equal* role.

Third, Chischilly had no motive to blame-shift with his family. Chischilly was under no obligation to tell them anything. His family was not asking him about the missing woman. There was no pressure from anyone to confess. Instead, Chischilly initiated the conversation himself and he did so because he felt guilty. Doc. 122-1 at 7:24-8:1; id. at 28:12-14; id. at 45:17-19. That feeling of guilt supports the conclusion that Chischilly told the truth to his family. Lying at the time would not absolve that guilty feeling; it would compound it by adding another sin to the list: deceit. The idea Chischilly had some reputational incentive to lie to his family does not make sense either. If Chischilly wanted his reputation to remain intact with his family, he would not have initiated the conversation. In short, there was just no motive to lie here. The Tenth Circuit's observation that "[w]e may safely surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind . . . falsely confessed a murder to an apparent acquaintance or friend" is supported by a powerful rationale. Smalls, 605 F.3d at 782-83 (10th Cir. 2010). There are just not a lot of reasons, if any, one would confess a murder to someone close to them, like a family member, unless it was true. See also Manning, 787 F. App'x at 988 n.1.

Fourth, if Chischilly's intent at the time of his family confession was to blame-shift to Yellowhorse, his arrest actions, which occurred after his family confession, do not make any sense. When Chischilly was arrested and had a prime opportunity to give misleading, blame-shifting statements to the FBI directly, *Chischilly did no such thing*. He did not try to blame the murder on Yellowhorse. Instead, as Yellowhorse acknowledges, Chischilly "denied any involvement in

4

the crime." Response at 6; see Doc. 135-4 at 1-3 (FBI report documenting the interview). He did not tell the agents Yellowhorse murdered someone and he had no involvement or that he just helped while Yellowhorse killed Doe. Doc. 135-4 at 1-3. If Chischilly intended to cast himself in a "minor role" to the audience that mattered most in terms of criminal liability, he had a tremendous opportunity to do so when arrested, but he did not. Those arrest statements should give the Court confidence that, when Chischilly confessed to his family, he did not harbor a motive to lie in the hopes that his family statements would make their way to law enforcement.

In an attempt to undermine Chischilly's family confession, Yellowhorse seems to point to some post-incarceration statements to maybe argue that his repeated statements, some of which are consistent, show he has a pattern of shifting the blame to Yellowhorse and thus the initial statements cannot be trusted. Response at 6-7. If that is the argument, to carry any weight, the Court must first find that they are blame-shifting, which, for the reasons cited above, they are not. Second, there is not a pattern of blame-shifting. As just noted, when the FBI interviewed him, he did not shift the blame to Yellowhorse. That break in the pattern is significant because it would have been the most important time to blame-shift if that was Chischilly's goal.

There was no blame-shifting here. "Blaming one's self *and* someone else does not necessarily reduce a statement's trustworthiness." Smalls, 605 F.3d at 785 (emphasis in original). Blame-shifting is not a ground for this Court to bar a jury from considering this evidence themselves.

## II. No evidence to corroborate Chischilly's statements

Yellowhorse contends "no evidence other than his statements corroborates the contention that Ms. Yellowhorse murdered P.M." Response at 3. That argument ignores the evidence, some of which was cited in the United States' initial Motion, to which Yellowhorse has no response.

5

For example, it ignores the evidence that Yellowhorse confessed to her stepmother after the murder that: "we hurt somebody real bad." Motion at 14, citing 122-2 at 11:4-5. Yellowhorse just "kept repeating herself" on that point. Id. Thus, Yellowhorse's own close-to-contemporaneous statements corroborate Chischilly's family confession. It also ignores Yellowhorse's statements admonishing Chischilly for confessing to his family:

> [Y]ou shouldn't have said anything . . . you shouldn't have said anything what [sic] we did it. We did it. It's none of those guys' business, it's none of their business.

Motion at 13-14, citing 122-1 at 45:20-25.

Yellowhorse also ignores other evidence, of which the following is not exhaustive. For instance, that Yellowhorse knew where to find portions of Doe's skull is circumstantial evidence of her involvement in the murder itself. To the contention that such evidence is evidence only that she helped afterwards, it ignores an equally plausible inference that Yellowhorse helped dispose of body parts because she participated in the murder and sought to cover up her involvement. It ignores Yellowhorse's credibility issues and her own motive to blame-shift when she spoke to law enforcement just before and after her arrest. Again, the Tenth Circuit's reasoning lights the way: "*arrest* statements of a codefendant have traditionally been viewed with special suspicion" because of a "strong motivation to implicate the defendant and to exonerate himself." Smalls, 605 F.3d at 781.[2] Indeed, of the two defendants here, only one cast themselves in a "minor role" when

---

[2] Yellowhorse accuses the United States of failing to credit "Ms. Yellowhorse's story," claiming there is corroborative evidence of it in the form of "her injuries." Response at 2. But her injuries only corroborate that she was assaulted, not that she did not participate in a murder that occurred over a week before she was observed with those injuries. To Yellowhorse's statement that she was arrested "[a]bout two days after the murder," id., that is factually inaccurate. Yellowhorse was arrested on February 1, 2020, and the murder occurred on or about January 23, 2020. There are other reasons to discredit Yellowhorse's version of events. For instance, her story to law enforcement shifted. First, she had no knowledge of what happened. Then she claimed she saw Chischilly murder Doe but stated many times she had no idea where her body was. A day later, she suddenly knew where parts of Doe's body were. In short, on top of the evidence cited above and Yellowhorse's motive to blame her co-defendant when speaking with law enforcement, there are many reasons to discredit Yellowhorse's story.

speaking to law enforcement directly. That defendant was not Chischilly; it was Yellowhorse. It ignores the identity evidence that Yellowhorse bragged to a friend that she and Chischilly had killed a man in the past, undermining Yellowhorse's argument that she was so terrified when she, purportedly, saw Chischilly killing Doe, that she fled. It ignores the other identity evidence in the form of a professed interest in satanism and the manner of Doe's murder. Ample evidence corroborates Yellowhorse's role in the murder. This is not a reason to prohibit the jury from weighing the evidence themselves.

**III.   The Forensic Report**

Yellowhorse argues that the forensic report cuts against the credibility of Chischilly's statement that Yellowhorse used a small sledgehammer to hit Doe's skull. Response at 8-9. According to her, the skull had no crushing injuries, just a radial injury consistent with a nail. Id. While true that the *portion* of the skull that was recovered had no crushing injuries, not all of the skull was recovered. As seen in the forensic report, a large swath of facial bones were not found and only mandible fragments were recovered:

 

Doc. 135-3 at 3, 11.

The portions that were not recovered are significant as the facial bones are on the head, as Chischilly stated to his family, and are also a more likely area to have been hit than the cranium (the large dome-like bone recovered) had Doe been crucified to the floor as everyone seems to agree. Hitting the cranium if Doe was nailed face-up to the floor would require striking Doe at an odd angle. The forensic anthropologist, moreover, did not rule out crushing injuries to the facial bones, noting explicitly that "it is possible that there was additional perimortem trauma to skeletal elements not recovered." Doc. 135-3, at 6.

But setting that argument aside for the moment, attacking Chischilly's statement on this detail – where Doe was struck with a hammer -- does *not* unravel his credibility. Assume Chischilly committed the murder by himself, as Yellowhorse claims, and he lied to his family. If that was the case, Chischilly would not have lied about this detail. If his goal was to blame-shift to Yellowhorse when he in fact was the one who struck Doe with a hammer, he would tell the truth about where he struck Doe because that would make it more likely for his blame-shifting scheme to succeed. That is so because the physical evidence would support his lie. In short, the forensic report is not a ground to bar the jury from evaluating the statements themselves.[3]

**IV.   Change of Plea Statements**

Yellowhorse argues that Chischilly's change of plea statements – statements made two years after his statements to his family -- bear on the credibility of his family confession. Response at 4, 7. As an initial matter, there is only one explicit inconsistency between Chischilly's change of plea and his confession to his family – at his change of plea he represented he did not nail Doe

---

[3] If the Court disagrees, this argument goes only to the admissibility of Chischilly's hammer statement, and it is not a reason to exclude Chischilly's other statements.

8

to the floor. Doc. 132 at 26:7-10, 29:4-6.[4] Consistent with his representations to his family, however, he stated Yellowhorse hit Doe with a "sledge." Id. at 25:19-22; id. at 31:1-2.

Yellowhorse's argument on this score fails for many reasons, but the primary one is the audience of the two statements and the consequences of a change of plea statement versus a family confession. A change of plea "is a hard decision," Doc. 132 at 10:24 (Yarbrough, J.), and it is not uncommon for defendants to get cold feet, id. at 10:7-8 ("Timothy's scared but he is ready to proceed.") (Cooper). Indeed, when a defendant like Chischilly is faced with accepting a significant amount of jail time – 23 years in Chischilly's case, id. at 13:13-16 – he has a tremendous reason to disavow his culpability especially if he is feeling scared at the change of plea hearing. And, no matter how many times Yellowhorse claims that Chischilly had that same incentive to disavow or minimize when he confessed to his family in the privacy of a home, his family does not have the power to imprison Chischilly for 23 years. Of the inconsistency between the two statements, the circumstances support that he told the truth to his family when the consequences of telling the truth did not mean 23 years in jail.

Other reasons suggest Chischilly's statements to the family are more credible than his change of plea utterances. For example, the statement's timing. His family confession happened less than a week after the murder, meaning his memory was fresh, whereas the change of plea was two years later. See United States v. Jumaev, 20 F. 4th 518, 544 (10th Cir. 2021) (recognizing that a witness's "recollection of relevant events" may "fade[], at least to some degree, over [a] long span of time"). Indeed, Chischilly acknowledged at the change of plea that his memory on the hearing date was not sound:

---

[4] Though not explicitly stating these words, the sum of Chischilly's statement also amounted to a repudiation that "we," meaning him and Yellowhorse, had killed someone.

9

> The Defendant: I don't remember, I don't remember that.
>
> The Court: All right
>
> The Defendant: I remember just taking them [the nails] out, that was it. Then she – my codefendant was standing there. I don't know if she's – she said something. I don't remember what she said. I know I had too much alcohol and I was on drugs, too. I don't remember.

Doc. 132: 27:13-20.

A tension exists with Yellowhorse's argument here too. The argument is, Chischilly was inconsistent between these two events – the Court should therefore not trust any of his family-member statements. However, the single statement that is inconsistent between these two events is also the one family-confession statement that Yellowhorse asserts is true. Specifically, that Chischilly nailed Doe to the floor. Thus, she is telling the Court to trust Chischilly's family admission on this one statement *over* the inconsistent statement he made at the change of plea. But then says, in the same stride, even though his family admission is more credible about nailing Doe to the floor, the Court should not credit the family admission and should bar introduction of his *consistent* statements between the two events. The Court should not accept this invitation. This argument is not a reason to preclude the jury from weighing this evidence themselves.

### V.     Coercive Control

Yellowhorse argues the family admission is not credible because he "exerted coercive control" over Yellowhorse. Response at 8. Thus, because, Yellowhorse "followed his directives," his family confession describing their two roles, with her in the role of bludgeoning Doe is incredible. Response at 8. Even assuming this was true (and there is evidence suggesting Yellowhorse controlled the relationship), Chischilly's coercive control does not bear on the family confession's credibility or on who bludgeoned Doe. Chischilly could have ordered Yellowhorse to do everything he told his family she did. This argument is not a ground to keep the jury from hearing and weighing this evidence themselves.

VI.     **Family Member Credibility**

Yellowhorse argues the statements should not be admitted because "[h]is family members are not credible." Response at 9-12. Even if that were true, that would not be a basis to exclude these statements. "[T]he credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances." United States v. Manning, 747 F. App'x 984, 988 (10th Cir. 2019) quoting Fed. R. Evid. 804(b)(3), Advisory Committee Notes (2010 Amendment). That is so because "exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses." Id. at 988-89 quoting Fed. R. Evid. 804(b)(3), Advisory Committee Notes (2010 Amendment). After all, "[a]n in-court witness's credibility is a classic jury question." Manning, 747 F. App'x at 988. The Court need not and should not weigh the family's credibility in making this determination.

But even Yellowhorse's bias argument against the family was material, it is unpersuasive. A premise of the argument is that the family "downplay[ed]" Chischilly's role when they reported it to law enforcement. Response at 9. That is not true since they relayed to law enforcement that Chischilly crucified someone as part of a homicide. Yellowhorse also insinuates that the family "align[ed] their stories of what had occurred" but offers no support for that except that Chischilly confessed to them in a group and that the FBI interviewed them separately in "quick succession." Response at 9. Those circumstances should not give the Court pause about the credibility of this confession. While the family's facts align, their statements are not identical as is if they were rehearsed. There is also no good reason to think the family plotted together in a scheme to "downplay" Chischilly's actions in a murder but still relay that Chischilly confessed to holding and a nailing a woman down as part of it.

11

In another vein, Yellowhorse raises Chischilly's prior criminal history as a reason to doubt Chischilly's family but draws a strange inference about it since most of his prior criminal history were crimes *against his family*. Response at 10-11. To Yellowhorse, that is evidence that the family would be biased *in favor* of Chischilly, but the evidence more easily cuts the other way – that they would not be biased in favor of Chischilly because he had hurt some of them in the past. She also contends that, in the face of Chischilly's prior violence, that the family reported that Yellowhorse was *the* reason for Mr. Chischilly's "immorality and bad behavior" shows they have a bias in favor of Chischilly and against Yellowhorse. Response at 9-12. That is not what the family reported, however. Some noted that Chischilly had gotten "worse" with Yellowhorse, Doc. 135-12, at 2, or that he had been "drinking more" with her, Doc. 135-11, at 7. It is true that some thought Yellowhorse might have been the reason for that change in behavior, but those statements are not the same in a bias analysis as if the family had held Chischilly out as a paragon of virtue only to be corrupted by Yellowhorse. They did not do that. Doc. 135-9 at 3 (Chischilly's sister reported Chischilly had "been involved in domestic violence but not to this extreme"). Yellowhorse also makes much of the fact that other family members did not report Chischilly's past acts of violence to the FBI in their interviews, Response at 11-12, but the FBI did not ask them about Chischilly's criminal history. It does not bear on anyone's bias to fail, on one's own, to raise up five-year old crimes in an interview. Yellowhorse's arguments are not evidence of bias, and, even if they were, that evidence of bias is not enough to keep a jury from considering that question themselves.

For the foregoing reasons, there are sufficient corroborating circumstances to admit all of Chischilly's proffered statements so that a jury can make the ultimate credibility determination.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney

*/s/ electronically filed March 14, 2022*
FREDERICK MENDENHALL
JENNIFER ROZZONI
Assistant U.S. Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-1402 phone
(505) 346-7296 fax

I hereby certify that a copy of this motion was delivered via CM/ECF to counsel for the defendant.

*Electronically filed*
FREDERICK MENDENHALL